## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| LARRY OUTLAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:11-cv-781-SEB-DML |
| | ) | |
| CORRECTIONAL MEDICAL SERVICES, INC., et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## Entry Discussing Correctional Facility Defendants' Motion for Summary Judgment

Plaintiff Larry Outlaw ("Outlaw") was incarcerated at the New Castle Correction Facility ("NCCF") at all times relevant to this complaint. Outlaw is currently confined at the Westville Control Unit. Outlaw has named nine defendants who in May of 2009 were employees of the GEO Group, Inc., a business that contracts with the Indiana Department of Correction ("DOC") to operate and manage the NCCF: Kimberly Gard, Dustin Patton, Cori Cox, Chad Lewis, Christopher Dietz, Mike Smith, David Ittenbach, Glen Thompson, and Jeff Wrigley ("Correctional Facility Defendants"). In addition, Outlaw named a number of other "medical" defendants. Outlaw alleges that the NCCF's personnel were deliberately indifferent to his serious medical needs when they confiscated his diabetic medications, failed to fill out the proper confiscation paperwork, and failed to alert medical staff when he allegedly experienced a diabetic reaction. The Correctional Facility Defendants seek resolution of Outlaw's claims through the entry of summary judgment.

For the reasons explained in this Entry, the motion for summary judgment filed by the Correctional Facility Defendants [33] is **granted.**

### I.  Summary Judgment Standard

A motion for summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the *Federal Rules of Civil Procedure*. A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems,*

*Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant=s favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

## II. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of that record that comply with the requirements of Rule 56(c), the following facts, construed in the manner most favorable to Outlaw as the non-movant, are undisputed for purposes of the motion for summary judgment:

The DOC and The GEO Group, Inc. executed a Contract for Services in September 2005 concerning "the operation and management of an adult male correctional facility known as the New Castle Correctional Facility." Pursuant to the Contract for Services, The GEO Group, Inc. "will not be responsible for the provision of food service, medical service, mental health service, and/or dental service."

In May 2009, Outlaw was an inmate housed in the Mental Health Unit ("MHU") of the NCCF. All correctional facility staff persons are charged with ensuring that there exists a safe and secure environment within the MHU of the NCCF. All medical care for offenders housed in the MHU is to be provided by a nurse or physician.

While housed in the MHU, offenders are given all medications during regular medication pass times by medical staff. In the event an offender in the MHU has any health concern, the offender is to prepare a Request for Health Care and place it in the Medical Box located in the unit or tender it directly to the nurse in the unit.

Defendant Dustin Patton served as the Sergeant and Assistant Shift Supervisor in the MHU in May 2009 and was familiar at that time with Outlaw who was housed in that unit during that time. In order to secure the safety and security of all persons in the MHU, correctional officers stationed in that unit would conduct cell searches to ensure that there was not contraband or medicine within any offender's cell, and in the event contraband or medicine was discovered, it would be confiscated. An offender's cell in the MHU may be searched daily and any contraband or other prohibited property must be confiscated.

On May 15, 2009, Outlaw filed a formal grievance alleging that on May 6, 2009, defendant Correctional Officer Cori Cox removed medicine from his cell and failed to provide him with a confiscation form, and that as a result he had a diabetic

reaction. Subsequent to his receipt of Outlaw's formal grievance, defendant Dave Ittenbach, in his capacity as the designee of the Executive Assistant, investigated the allegations included in Outlaw's grievance in accordance with the Manual of Policies and Procedures, Offender Grievance Process. On May 20, 2009, Outlaw's formal grievance was resolved by Ittenbach with a response indicating that Outlaw was not permitted to have any medication in his possession and that if he needed medication he should contact medical personnel through custodial staff or medical staff. On May 26, 2009, Outlaw filed a grievance appeal through which he reiterated his prior allegations. Outlaw's appeal was subsequently denied for the restated reason that offenders in the MHU are not allowed to possess medication and that post orders were properly followed.

Defendant Patton recalls no informal complaint being tendered to him by Outlaw in May 2009 concerning the confiscation of medicine or the lack of treatment for a medical event or medical emergency. There is always a nurse assigned to the MHU. Patton does not recall Outlaw experiencing a medical event or medical emergency in May 2009. Patton recalls no complaint being tendered to him from Outlaw in May of 2009 about Officer Cox, Officer Dietz, or Officer Lewis, and therefore, he did not inform Kim Gard, Glen Thompson, or Jeff Wrigley about any failures to comply with policies and procedures by Officer Cox, Officer Dietz, or Officer Lewis. In the event Outlaw would have lodged a complaint with Patton, Patton would have investigated that complaint by speaking with named correctional officers or staff and then discussed with Outlaw the results of his investigation.

### B. Analysis

At the time of his confinement at the NCCF, Outlaw was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment=s proscription against the imposition of cruel and unusual punishments. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

*Defendants Gard, Thompson, Smith, Ittenbach, and Wrigley*

Outlaw alleges that defendants Custody Supervisor Kimberly Gard, Custody Major Glen Thompson, Executive Assistant Mike Smith, and Facility Head Jeff Wrigley failed to respond to any of his request slips, complaint forms or letters, and refused to discipline any of the prison staff for confiscating his medicine and refusing to contact the medical department. To be liable for damages, an individual must have personally participated in the alleged constitutional deprivation. *Zimmerman v. Tribble,* 226 F.3d 568, 574 (7th Cir. 2000); *see also Sanville v.*

*McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (to be liable for the deprivation of a constitutional right, an individual must personally participate in the deprivation or must direct the conduct or have knowledge of and consent to the conduct). Without personal liability, there can be no recovery under 42 U.S.C. ' 1983. *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009) (ASection 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise . . . . *Monell's* rule [is] that public employees are responsible for their own misdeeds but not for anyone else's.@)(citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658 (1978)).

As to defendant Ittenbach, he investigated Outlaw's grievance and determined that Outlaw was not allowed to have medication in his cell. The record is undisputed that defendants Gard, Thompson, Smith, Ittenbach, and Wrigley held administrative positions and were not responsible for providing medical treatment. Any communications Outlaw allegedly sent to these defendants are not part of the record. Such communications were allegedly sent to these defendants, however, sometime after Outlaw suffered his alleged medical incident. Moreover, Outlaw is not entitled to have disciplinary action imposed on prison staff at his request. There is no evidence that these defendants were aware of Outlaw's serious medical needs in May of 2009 at any time, particularly at a time when some action could or should have been taken. Outlaw has not presented any evidence which creates a genuine issue of fact that Gard, Thompson, Smith, Ittenbach, and Wrigley were deliberately indifferent to his serious medical needs or violated any of his constitutional rights. Defendants Gard, Thompson, Smith, Ittenbach, and Wrigley are therefore entitled to summary judgment.

*Defendants Cox, Patton, Lewis, and Dietz*

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish a medical claim that a prison official has violated the Eighth Amendment, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) deliberate indifference by the prison officials to that condition. *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006).

A[A]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.@ *Id.* at 584-85 (internal quotation omitted). The defendants do not dispute that Outlaw had an objectively serious medical condition, diabetes.

As to the second element, "[t]o show deliberate indifference, the plaintiff must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009).

Outlaw alleges that Correctional Officer Cox confiscated his oral medication without providing the proper form. There is no constitutional right to have a confiscation form provided when contraband or some other unauthorized material is found in an inmate's cell. Aside from that, for purposes of safety and security, prison policies prohibit inmates in the MHU from possessing medication in their cells. Even if exceptions have occurred, which Outlaw appears to contend through the affidavit of offender Adam Nowak, it is undisputed that Officer Cox was in compliance with prison procedures when removing medication from Outlaw's cell. This was a single incident, and there is no evidence that Officer Cox was aware that Outlaw would suffer any serious medical condition by removing a single dose of medication. Indeed, other than Outlaw's allegation that he lost consciousness, there is no evidence showing that he did, in fact, experience a serious medical need as a result of the removal of the medication. For these reasons, the court does not find a genuine issue of fact that Officer Cox was deliberately indifferent to Outlaw's serious medical needs.

Outlaw alleges that defendants Officers Dietz, Lewis and Patton came to his cell on May 6, 2009, when they made security rounds. Each of them allegedly refused to notify medical staff that Outlaw's medication had been confiscated. The officers allegedly determined that contacting medical personnel was not warranted under the circumstances. As noted, Outlaw has presented no evidence that these officers knew that if Outlaw missed a single dose of medication, he would experience a serious medical need. In addition, Outlaw has not shown that he was unable to contact medical personnel by preparing a Request for Health Care and placing it in the Medical Box located in the unit. Moreover, Outlaw alleges that he was, in fact, seen in his cell by a nurse on the afternoon of May 6, 2009, for a glucose reading.

"Deliberate indifference is more than negligence and approaches intentional wrongdoing." *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006) (internal quotation omitted). "[D]eliberate indifference is essentially a criminal recklessness standard, that is, ignoring a known risk." *Id.* (internal quotation omitted). "Even gross negligence is below the standard needed to impose constitutional liability." *Id.* (internal quotation omitted). Outlaw has not identified a genuine issue of material fact as to his claim that Officers Dietz, Lewis and Patton were deliberately indifferent to his serious medical needs.

### III. Conclusion

For the reasons set forth above, the motion for summary judgment filed by the Correctional Facility Defendants [33] must be **granted.**

The court's ruling on the Medical Defendants' motion for summary judgment is also being issued. All claims against all defendants have now been resolved. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 01/15/2013

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All electronically registered counsel

Larry Outlaw
DOC #900496
Westville Control Unit
5501 South 1100 West
Westville, IN 46391